UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH DARLING, ) | |
| ) | |
| Petitioner, ) | |
| ) | CIVIL ACTION |
| v. ) | NO. 22-11664-JGD |
| ) | |
| AMY BONCHER, Warden, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OF DECISION AND ORDER ON**
**PETITIONER'S HABEAS PETITION PURSUANT TO 28 U.S.C. § 2241**

January 19, 2023

DEIN, U.S.M.J.

**I. INTRODUCTION**

Following his guilty plea to a charge of conspiracy to distribute oxycodone in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C), Petitioner Joseph Darling ("Darling") was sentenced by the U.S. District Court for the District of Vermont on October 1, 2015 to a term of 120 months imprisonment, 10 years of supervised release and a consecutive sentence of 11 months for a supervised release violation, for an aggregate sentence of a 131-month term of imprisonment with a 10-year term of supervision.[1] (Resp. Ex. A). According to the Bureau of Prisons' ("BOP") calculations, Darling's release date is projected to be May 17, 2023, assuming maximum credits under the First Step Act ("FSA"). On September 28, 2022, Darling brought a

---

[1] Both parties have attached the relevant sentencing calculations to their pleadings, although the Respondent's attachments are more comprehensive. The facts are not in dispute and the court will cite to the exhibits attached to "Respondent's Opposition to Petition for a Writ of Habeas Corpus" (Docket No. 11) ("Resp. Ex. ___") and to the exhibits attached to the "Supplemental Briefing by Respondent" (Docket No. 21) ("Resp. Supp. Ex. ___").

petition for a writ of habeas relief pursuant to 28 U.S.C. § 2241 (Docket No. 2), alleging that he is entitled to an additional 211 days of good-time credits, which would set his release date as October 21, 2022.

Respondent opposed the petition on the grounds that Darling had failed to exhaust his administrative remedies and because there were no errors in the calculation of his sentence. However, after reviewing the pleadings, including Darling's supplemental briefing of December 12, 2022 (Docket No. 17), the Court determined that further briefing would be helpful and ordered the Respondent to address the issues raised by Darling. (Docket No. 18). The Respondent filed its "Supplemental Briefing" on January 10, 2023, providing more details as to how it calculated Darling's sentence. (Docket No. 21) ("Resp. Supp. Mem."). The Respondent confirmed that Darling is scheduled to be transferred to a Residential Reentry Center on January 18, 2023, and that his projected release date is May 17, 2023.

After careful consideration of the parties' pleadings, this Court concludes that Darling has failed to establish any errors in the calculation of his sentence. Therefore, his Petition for Habeas Relief is DENIED.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Prisoners challenging their conditions of confinement are required to exhaust their administrative remedies before they may petition for habeas corpus relief under 28 U.S.C. § 2241. Rogers v. United States, 180 F.3d 349, 358 (1st Cir. 1999) ("Once administrative remedies are exhausted, see 28 C.F.R. §§ 542.10-542.16, prisoners may then seek judicial review of any jail-time credit determination . . . by filing a habeas petition under 28 U.S.C. § 2241" (internal citation omitted)); see Levine v. U.S. Dep't of Federal Bureau of Prisons, Civil Action No. 20-cv-

11833-ADB, 2021 WL 681689, at * 3 (D. Mass. Feb. 22, 2021) (§ 2241 habeas petition seeking sentence credit subject to dismissal if prisoner fails to exhaust his administrative remedies with the BOP (and cases cited)).  Proper exhaustion of administrative remedies "'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  Woodford v. Ngo, 548 U.S. 81, 90, 126 S. Ct. 2378, 2385, 165 L. Ed. 2d 368 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The procedures for challenging a decision of confinement by the BOP are detailed in the Administrative Remedy Program, 28 C.F.R. §§ 542.10 *et seq.*  The Program provides for several steps which prisoners must follow.  First, the prisoner must attempt to resolve the complaint informally with the staff.  28 C.F.R. § 542.13(a).  If an informal resolution cannot be found, an inmate must submit a formal written Administrative Remedy Request to the Warden through a "BP-9" form within 20 days of the events which form the basis of the inmate's request.  28 C.F.R. § 542.14(a).  An inmate dissatisfied with the Warden's response to the BP-9 request may submit an appeal to the Regional Director via a "BP-10" form within 20 days of the date the Warden signed the BP-9 form.  28 C.F.R. § 542.15(a).  Lastly, an inmate dissatisfied with the Regional Director's response may appeal to the BOP's Office of General Counsel via a "BP-11" form within 30 days of the date the Regional Director signed the response.  Id.  "Appeal to the General Counsel is the final administrative appeal."  Id.  Only when these administrative remedies have been exhausted, may the inmate proceed to file a habeas petition.

In the instant case, it is undisputed that Darling has not engaged in the administrative process to address his challenge to his sentence.  Darling asks, however, that the exhaustion requirement be excused.  "Some courts have recognized the potential for a waiver of the

administrative exhaustion requirement for § 2241 petitions where a petitioner can show that fulfilling the requirement would be futile." Levine, 2021 WL 681689, at *3. See also Rodriguez-Rosa v. Spaulding, Civil Action No. 19-11984-MBB, 2020 WL 2543239, at *10 (D. Mass. May 19, 2020) (and cases cited). Other courts have excused a failure to exhaust where a claim is limited to statutory construction. See, e.g., Coleman v. U.S. Parole Comm'n, 644 F. App'x 159, 162 (3d Cir. 2016) ("exhaustion is not required with regard to claims which turn only on statutory construction"). Still others have excused exhaustion where requiring the petitioner to engage in the administrative process would cause irreparable injury, as the petitioner would be incarcerated beyond their sentence. See, e.g., Nelson v. Cox, C/A, No. 4:20-cv-04199-KES, 2021 WL 1221178, at *2 (D.S.D. April 1, 2021) (petition challenging application of earned time credits allowed to proceed without exhaustion where petitioner "has alleged facts to show that requiring him to exhaust his administrative remedies before coming into court would cause him irreparable harm because he is allegedly already entitled to be released from prison."). There is also support for the proposition that a prisoner may be excused from exhausting all administrative remedies before filing a § 2241 petition if the petitioner can make a showing of "cause and prejudice." Dunbar v. Sabol, 649 F. Supp. 2d 1, 4 (D. Mass. 2009) (citing Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 630 (2d Cir. 2001)). Finally, but without limitation, courts have held that they "may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." Montoya Villagomez v. Knight, 2021 WL 6494745, at *4 (D.S.C. June 16, 2021) (internal quotation and citation omitted).

[4]

In the instant case the Court declines to rely on the exhaustion requirement and will address the issues raised in Darling's habeas petition on the merits.  In the usual case, the administrative process is helpful to develop the factual record.  Here, Darling has raised a straightforward issue, and requiring him to proceed administratively might cause him irreparable harm as, according to his calculations, he should be released immediately.  Moreover, the Respondent has fully explained how Darling's release date was calculated.  Under these circumstances, the court will address the merits of the habeas petition.

### III.  ANALYSIS

Darling contends that he is entitled to an additional 211 days of good-time credits, which should have been applied before he began his last year of incarceration.  As a result, Darling argues, he should have been released already.  According to the BOP, however, it has calculated Darling's release date based on all the good-time credits to which he is entitled.  This court agrees.

Prior to 2018, 18 U.S.C. § 3624 provided in relevant part:

(b) Credit toward service of sentence for satisfactory behavior. –

(1) . . . a prisoner who is serving a term of imprisonment of more than 1 year . . . may receive credit toward the service of the prisoner's sentence, **beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment,** beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . . [C]redit for the last year of a term of imprisonment shall be credited on the first day of the last year of the term of imprisonment.

18 U.S.C. § 3624(b)(1) (emphasis added).  The BOP originally interpreted this statute as authorizing it to award good-time credits "only for time actually served rather than for the length of the sentence imposed."  See Harper v. English, No. 17-3088-SAC, 2017 WL 5158183, at

[5]

*3 (D. Kan. Nov. 7, 2017). This interpretation was upheld by the Supreme Court in <u>Barber v. Thomas</u>, 560 U.S. 474, 488, 130 S. Ct. 2499, 2509, 177 L. Ed. 2d 1 (2010) ("In our view, the BOP's calculation system applies that statute as its language is most naturally read, and in accordance with what that language makes clear is its basic purpose.").

In 2018, however, § 3624(b) was amended to, *inter alia*, delete the highlighted language and replace it with "of up to 54 days for each year of the prisoner's sentence imposed by the court[.]" Pub.L. 115-391, § 102(b)(1)(A). This amendment assured that "defendants receive the maximum of 54 days of good conduct time for each year of the sentence that was imposed, rather than – as had been BOP's practice – for each year of the sentence that had been actually served." <u>United States v. Laurita</u>, No. 8:13CR107, 2019 WL 2603101, at *2 (D. Neb. June 25, 2019).

Darling contends that he is entitled to 211 days of credit for which the BOP has determined he will qualify in the future. Thus, in a June 2022 report detailing all of the good-time credits for which Darling could be eligible, the BOP included the following dates for which Darling had not yet received credit:

| | |
|---|---|
| 1-20-2022 – 1-19-2023 | 54 days |
| 1-20-2023 – 1-19-2024 | 54 days |
| 1-20-2024 – 1-19-2025 | 54 days |
| 1-20-2025 – 12-19-2025 | <u>49 days</u> |
| | 211 days |

(Resp. Ex. C). While Darling contends that he is entitled to those credits now, there is nothing in the 2018 amendment which altered when the prisoner would receive the good-time credits – the statutory scheme still required that the days be earned before the days are actually applied.

[6]

After Darling was committed post-sentencing on October 1, 2015, his projected release date was December 19, 2025. (Resp. Ex. A). His potential good-time credits, which the BOP calculated at the rate of 54 days per year *for the entire period of his sentence*, was 589 days. (Resp. Ex. C). He lost 7 days for behavioral infractions in 2016, for a potential present total of 582 days. (Id.). If he receives all remaining good conduct time, BOP has calculated his projected release date as May 16, 2024. (Resp. Ex. A). The BOP also credited Darling with 515 days of FSA credits, which changed his projected release date to May 17, 2023. (Resp. Supp. Ex. B).[2]

Since the BOP calculated the maximum amount of Darling's good-time credits based on his sentence, and not his period of incarceration, there was no error. His argument, that under 18 U.S.C. § 3624(b) he is entitled to apply credits even if they have not yet accrued, is without basis. As 18 U.S.C. § 3624(b)(1) makes clear, the BOP has the authority to award such credits if the Bureau determines that, "during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." Concomitantly, the statute provides that "if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate." Id. As the Respondent argues:

> because GCs [good-time credits] are earned and depend on good behavior while incarcerated, they cannot be earned in advance. BOP does *project* an anticipated

---

[2] FSA credits are earned through participation in programs designed to assist the inmate with reentry into society, based on a needs assessment. See 18 U.S.C. § 3632(d)(4). Darling does not dispute the calculation of his FSA credits, or how the BOP applied those credits, so they will not be discussed in detail any further.

release date, taking into account the maximum GCs an inmate may accumulate.  That does not mean that an inmate will, in fact, earn all of those GCs.

(Resp. Supp. Mem. at 3) (emphasis in original).  Here, the BOP properly calculated Darling's release date by projecting the amount of good time credits he could earn based on his entire sentence.  There was no error.

## IV. CONCLUSION

For all the reasons detailed herein, Darling's Petition for Habeas Relief is DENIED.

                                       / s / Judith Gail Dein
                                       Judith Gail Dein
                                       United States Magistrate Judge